IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SAVANNAH OAKS CONDOMINIUM ASSOCIATION, INC., on behalf of itself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>WASTE MANAGEMENT, INC. and GEORGIA WASTE SYSTEMS, INC.,<br><br>  Defendants. | CIVIL ACTION NO.<br>1:17-CV-330-SCJ |

## ORDER

This matter appears before the Court on Defendant Waste Management, Inc.'s renewed Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. [63]). For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

A review of the record shows that Plaintiff, Savannah Oaks Condominium Association, Inc., filed a class action complaint (in the Superior Court of Fulton County, Georgia) against Defendants Waste Management, Inc. ("WMI") and Georgia Waste Systems, Inc. ("Georgia Waste"). Doc. No. [1-1], p. 2. Plaintiff's

putative class action arises out of an alleged breach of contract. Doc. No. [1-1]. Plaintiff seeks both monetary damages and an injunction. Id.

Defendants subsequently removed the action to the Northern District of Georgia and moved to dismiss the complaint. Docs. Nos. [1], [5], and [6]. Plaintiff thereafter amended its complaint and the motion to dismiss was rendered moot. Doc. Nos. [10], [13].

Following the filing of the Amended Complaint, Defendant filed a second Motion to Dismiss for Lack of Personal Jurisdiction on April 14, 2017. Doc No. [15]. On May 8, 2017, Plaintiff filed a Motion for Leave to Conduct Jurisdictional Discovery. Doc. No. [20]. The Court granted Plaintiff's motion on January 25, 2018 and deferred ruling on the motion to dismiss. Doc. No. [31].

Following the conclusion of the discovery period, Defendant WMI filed its *renewed* Motion to Dismiss for lack of personal jurisdiction currently at issue before the Court Doc. No. [63]. The matter has been fully briefed and is now ripe for review.[1]

---

[1] Plaintiff has also submitted supplemental evidence (Doc. No. 80]) concerning Defendant WMI retaining Georgia lobbying services to which Defendant WMI has filed a response (Doc. No. [81]) in which it states that it was not a party to the lobbying independent contractor agreements presented by Plaintiff as supplemental evidence. The Court has considered said evidence; however, its ruling, *infra*, remains the same.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may assert the defense of lack of personal jurisdiction by motion.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted);[2] see also United States v. One 28 Foot Contender Motor Vessel, 240 F. App'x 842, 843 (11th Cir. 2007) ("Directed verdicts are appropriate only where the evidence is so one-sided that no reasonable jury could reach a contrary conclusion.").

"Where . . . the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" Mazer, 556 F.3d at 1274

---

[2] "The 1991 amendments to Rule 50 changed the terminology from 'directed verdict' to 'judgment as a matter of law.' The Advisory Committee Notes make clear that this new terminology does not alter the traditional standards applied by district courts and courts of appeal in passing on such motion." Howell v. Burden, 12 F.3d 190, 191 n.1 (11th Cir. 1994).

(citations omitted). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits . . . . [W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." Madara, 916 F.2d at 1514 (citations omitted).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Mazer, 556 F.3d at 1274.

As this Court sits in Georgia, in the case *sub judice*, the applicable long-arm statute is the State of Georgia's Long-Arm statute, O.C.G.A. § 9-10-91.[3] Said statute provides in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the

---

[3] "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). The Eleventh Circuit Court of Appeals has further stated that "[t]he [Georgia] long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1259 (11th Cir. 2010).

acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state . . . .

O.C.G.A. § 9-10-91(1).

"[T]he exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1260 (11th Cir. 2010).

Here, Plaintiff asserts that "this Court has personal jurisdiction over [Defendant] WMI because it conducts substantial business within the State of Georgia, such that it has significant, continuous, and pervasive contacts with this State." Doc. No. [10], p. 5, ¶ 13.

Thus, the Court must give consideration to the first prong of the Georgia Long Arm Statute (i.e., subsection (1) of O.C.G.A. § 9-10-91), which provides in relevant part that a court of the State of Georgia may exercise personal jurisdiction over any nonresident if in person or through an agent, the nonresident transacts any business within this state. O.C.G.A. § 9-10-91(1).

"Georgia courts have yet to fully explain the scope of the '[t]ransacts any business within this state' language." Diamond Crystal, 593 F.3d at 1262. The

Eleventh Circuit has stated that "unless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case." Diamond Crystal, 593 F.3d at 1263. "Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia].'" Id. at 1264.[4] Tangible and intangible conduct (such as mail, telephone calls, and other acts) must be examined to determine if a nonresident has transacted any business within Georgia. Id. A defendant need not physically enter the state to transact business in Georgia. Id.; see also Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC, 316 Ga. App. 471, 475–76, 729 S.E.2d 605, 609 (2012).

"When a federal court uses a long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as

---

[4] "In conducting this mixed law and fact inquiry, [the Eleventh Circuit has looked to dictionary sources and found] instructive the literal definition of the words in the statute. 'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.' 'Any' means 'to any extent' or 'in any degree.' 'Business' means 'activity directed toward some end,' or 'a usually commercial or mercantile activity customarily engaged in as a means of livelihood,' or 'transactions, dealings, or intercourse of any nature.'" Diamond Crystal, 593 F.3d at 1265 n.18 (internal citations omitted).

would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). The Georgia Supreme Court has held that the above stated subsection (1) of the Georgia Long-Arm statute "is limited by Due Process considerations,"[5] and Georgia Courts therefore apply a three-part test in considering whether courts may exercise personal jurisdiction over a nonresident on the basis of the transaction of business:

> "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice."

Amerireach.com, LLC v. Walker, 290 Ga. 261, 269, 719 S.E.2d 489, 496 (2011); see also Sullivan v. Bunnell, 340 Ga. App. 283, 286, 797 S.E.2d 499, 502 (2017).[6]

---

[5] "In interpreting Georgia Long Arm Statute, the Supreme Court of Georgia has explained that [the statute] grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . . to the maximum extent permitted by procedural due process." Sullivan v. Bunnell, 340 Ga. App. 283, 285, 797 S.E.2d 499, 501 (2017) (quotations omitted).

[6] The Eleventh Circuit has interpreted "the first prong of this test as reflecting the requirement of subsection (1) of the long-arm statute and the second and third prongs as comprising the traditional due process inquiry." Diamond Crystal, 593 F.3d at 1260, n.11. However, in a recent opinion, the Georgia Court of Appeals stated: "[t]he first two prongs are analyzed to determine whether 'a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction.' If such minimum contacts exist, we then analyze the third prong to consider whether 'the exercise of jurisdiction is 'reasonable'—that is, to ensure that it does not result solely from 'random,' 'fortuitous' or 'attenuated' contacts.'" Sullivan, 340 Ga. App. at 286, 797 S.E.2d at 502.

**III.   ANALYSIS**[7]

   **A.   Georgia Long-Arm Statute**

The applicability of Georgia's Long-Arm statute to Defendant in this case depends on whether WMI "transacts any business within [Georgia]" according to the meaning of the statutory language. O.C.G.A. § 9–10–91(1). As indicated above, under Georgia law, "[j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Walker, 290 Ga. at 269.

Defendant WMI argues that it is not subject to the Georgia Long-Arm statute because it is a Delaware holding company with its principal place of business in Texas and does not transact any business in the state (nor is it registered to transact business in Georgia). See Doc. No. [63–1]; Doc. No. [77], p. 6. In support of its arguments, Defendant WMI presents the declaration[8] and

---

   [7] Deposition citations are to the CM/ECF header, not to the pages of the deposition.

   [8] Defendant WMI has also included a declaration from its Corporate Secretary, Courtney Tippy, in which she explains the corporate structure of WMI. Doc. No. [15-2].

testimony of its corporate secretary/representative Courtney Tippy. Ms. Tippy testified that WMI "has no operations, no employees, no operating assets, and . . . would not be in a position to transact or solicit any business in the state of Georgia, nor conduct any waste hauling operations." Doc. No. [64-5], p. 10, lines 5–10.

Defendant WMI states: "[t]his action does not arise out of activities by WMI because of the most fundamental reason. Georgia Waste, not WMI, was the party that contracted with [Plaintiff] Savannah Oaks in 2012." Doc. No. [63-1], p. 15. Defendant WMI states that the jurisdictional discovery confirmed that it was Defendant Georgia Waste (not Defendant WMI) that contracted with Plaintiff, as Defendant WMI could not contract to or actually perform waste collection services in Georgia. Id. at p. 5. Defendant WMI states that "[w]hile Georgia Waste is not specifically identified by its full formal legal name on the face of the contract at issue in this litigation, that contract bears the 'WM' service mark and the 'Waste Management' trade name, and references to Waste Management Atlanta East, identifying its Norcross, Georgia address." Id. at p. 6. Defendant WMI states that "[t]he salesperson for [Plaintiff's] account in 2012 was Taylor Clark, then a Georgia Waste employee. Mr. Clark was not employed

WMI or authorized by WMI to contract on its behalf." Doc. No. [63-1], p. 6. Defendant WMI also states that the words "Waste Management" ("WM") and "certain derivatives thereof are registered service marks associated with the offering of waste services in the United States." Id. at p. 5. Defendant WMI further states that Defendant Georgia Waste "is licensed to use these service marks for its Georgia operations; and it, not WMI, conducts waste hauling operations under the Waste Management trade name and service mark in the state." Id. Defendant states that "since 1997, Georgia Waste has held the registered trade name 'Waste Management' in the State of Georgia." Id.; Doc. No. [63-2].

Plaintiff argues, however, that the contract at the center of its cause of action, satisfies the transacting business requirement, as Defendant WMI's own corporate representative testified that the only legal entity identified in the 2012 contract at issue is "Waste Management, Inc." Doc. No. [73], pp. 2, 18 (citing Doc. No. [73-1], p. 61, lines 3–5). Ms. Tippy also testified that the name "Georgia Waste Management Systems, Inc." does not appear in the contract at issue. Id. at p. 63, lines 5–8.[9] Plaintiff states that "WMI's corporate structure is built on

---

[9] While Ms. Tippy acknowledges that WMI is the only legal entity name on the contract, Ms. Tippy disagrees with the interpretation of that made by Plaintiff. Doc. No. [73-

10

employees of one entity making binding decisions for entities that they are not actually employed by." Doc. No. [73], p. 5. Plaintiff also states that "the fact that a service mark [of "Waste Management"] appears on the 2012 contract at issue pursuant to a nonexclusive license does nothing to inform Savannah Oaks that the contract was with any party other than WMI." Id. at p. 11. Plaintiff urges the Court to reject Defendant WMI's argument that the contract is between Georgia Waste and Savannah Oaks in light of Ms. Tippy's deposition testimony and because the Court must make all reasonable inferences regarding conflicting evidence in favor of Plaintiff. Id. at p. 20. Plaintiff also asks the Court to take into account that Defendant WMI admitted that there are hundreds of contracts that were executed and that bear the same language at issue as Plaintiff's contract. Id.

Plaintiff supports this argument by citing two Georgia Court of Appeals holdings, which extend personal jurisdiction to nonresident corporate defendants that entered into contracts in Georgia. Doc. No. [73], p. 19 (citing Crossing Park Props., 316 Ga. App. at 471, 729 S.E.2d at 605 and Dora-Clayton Agency, Inc. v. Forjay Broad. Corp., 193 Ga. App. 340, 387 S.E.2d 617, 618–19 (1989). Plaintiff

---

1], pp. 61–62.

asserts that any mention of Georgia Waste being absent from the contract indicates that it represents an agreement between Savannah Oaks and WMI. Doc. No. [73], pp. 20–21. In making this assertion, Plaintiff reminds the Court that it must make reasonable inferences about conflicting evidence in Plaintiff's favor. Id.

In reply, Defendant states that "[a]t best, Plaintiff raises an ambiguity in this contractual provision, but can take that ambiguity no further . . . ." Doc. No. [63-1], p. 19. Defendant WMI also referenced agency principles and stated that "[t]he evidence is uncontroverted that WMI did not give Taylor Clark—who signed the contract—authority to contract on its behalf. To the contrary, as Mr. Clark testified, he was a sales representative for Georgia Waste at the time and has never been an employee, officer, or agent of WMI." Doc. No. [63-1], p. 17 (citing (Clark Depo. (Doc. No. [64-2]), pp. 47:19-48:6). Defendant WMI also states that "Georgia Waste has registered the trade name Waste Management in Georgia, and it used this trade name to contract with Plaintiff." Doc. No. [63-1], p. 15, n.24.

After review, the Court finds that Plaintiff's argument that the contract is not with Georgia Waste Systems, Inc. is not persuasive, as the words "Waste

12

Management" appear at the top of pages 1 and 2 of the contract and the representative signing the document included the words "Waste Management" under his signature.  Doc. No. [10-1], p. 2.  The evidence shows that Georgia Waste is licensed to offer its services under its trade name of "Waste Management," as part of its agreement with Defendant WMI.  Doc. No. [5-3], p. 4, ¶ 6; Doc. No. [64-5], p. 10, lines 1–16.  Defendant WMI is also correct that the Georgia Supreme Court has held that a corporation has the legal right to enter contracts under a registered trade name instead of its corporate name.  Matter of Allison, 267 Ga. 638, 644 n.11 (1997) (citing O.C.G.A. § 10-1-490 (titled, "business conducted under a trade name").  While the sentence on page 3 of the contract that states that the "terms and conditions apply to solid waste . . . services . . . as may be provided by affiliates and subsidiaries of Waste Management, Inc. ("Company")" is ambiguous,[10] this ambiguity can be resolved through application of the rules of contract interpretation.  See Nat'l Hills Exch., LLC v. Thompson, 319 Ga. App. 777, 778, 736 S.E.2d 480, 482 (2013) ("If the plain language is ambiguous, however, the contract is interpreted in accordance with

---

[10] "Ambiguity in a contract may be defined 'as duplicity, indistinctness, an uncertainty of meaning or expression.'" Taylor v. Estes, 85 Ga. App. 716, 718, 70 S.E.2d 82, 84 (1952). "The question whether a contract term is ambiguous is also a question of law." In re SGE Mortg. Funding Corp., 298 B.R. 854, 860 (Bankr. M.D. Ga. 2003) .

the rules set forth in OCGA § 13–2–2 to resolve the ambiguity."). Said rules provide that parol evidence is admissible to explain an ambiguity as to which party a term refers to in the contract. See Capital Color Printing, Inc. v. Ahern, 291 Ga. App. 101, 105, 661 S.E.2d 578, 583 (2008) ("because the contract identifies the principal debtor as the 'customer,' parol evidence is admissible to help explain any ambiguity as to whom that term refers."). Here, the issue is whether the word "Company" on page 3 of the contract refers to the "affiliates and subsidiaries of Waste Management, Inc." or just to "Waste Management, Inc." In taking into account the surrounding circumstances of Defendant Georgia Waste Systems, Inc.'s authorized use of the trade name "Waste Management," and Waste Management, Inc.'s status as a holding company with no operations, the Court finds that the ambiguity is resolved by the reasonable interpretation that the word "Company" refers to the affiliates and subsidiaries of Waste Management, Inc. and that the use of the words "Waste Management" at the top of pages 1 and 2 of the contract, and in the signature blank, were trade name usages, to refer to Defendant Georgia Waste Systems, Inc. Therefore, the contract at issue is between Plaintiff and Defendant Georgia Waste Systems, Inc. Defendant WMI is not a party to this contract, so the contract (and the hundreds

14

of other contracts bearing the same language) cannot serve as a basis for concluding that Defendant WMI is transacting business in Georgia, or subject to Georgia's Long-Arm Statute under the transacting business prong of the Long-Arm Statute.

Lastly, while Plaintiff is correct that the Court must construe all reasonable inferences in favor of Plaintiff, Defendant WMI is also correct that, in reality, here, there are no conflicts between the evidence put forth by the parties, "only the legal significance the parties urge to be drawn from that evidence." Doc. No. [77], p. 8, n.6. Nevertheless, both reasonable inference and the legal significance of the evidence is that the contract involves Defendant Georgia Waste Systems, Inc., not Defendant WMI.

Agency principles also support this ruling, as the individual who signed the contract at issue, Taylor Clark, used the words "Waste Management" under his signature and he testified that he did not work for Defendant WMI. Doc. No. [64-2], pp. 15–16. He also testified that he did not have authority to sign contracts on behalf of Defendant WMI. Id. Therefore, there was no principal-agent relationship sufficient to bind Defendant WMI to the contract at issue. See O.C.GA. § 10-6-1 ("The relation of principal and agent arises wherever one

15

person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."). While Plaintiff asserts that "WMI's corporate structure is built on employees of one entity making binding decisions for entities that they are not actually employed by," the Court is not aware of any authority that allows it to disregard agency principles under the present circumstances before the Court. Doc. No. [73], p. 5.

The Court cannot exercise personal jurisdiction under subsection (1) of Georgia's Long-Arm statute. "Because [plaintiff] failed to demonstrate jurisdiction under Georgia's long-arm statute, [this Court] need not decide whether jurisdiction [is] proper under the Due Process Clause." Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 829 (11th Cir. 2012); see also Sullivan, 340 Ga. App. at 286, 797 S.E.2d at 502 (indicating that the third prong (a due process inquiry) of Georgia's three-party test in considering whether courts may exercise personal jurisdiction is only analyzed after the first two prongs determine that defendant has established minimum contacts with the forum state).[11]

---

[11] The other conduct listed in the Complaint (Doc. No. [10], pp. 5–6) would not satisfy the second prong of Georgia's three-part test for jurisdiction under Georgia's Long-Arm statute because cause of action does not arise from and is not connected with said conduct.

B. **Alter-Ego Theory**

In Paragraph Ten of the Complaint, Plaintiff asserts that even if there is a mistake in the contract at issue (and in other cited instances) and the contract at issue was actually performed by Defendant WMI's subsidiary, Georgia Waste, "such repeated 'mistakes' evidence that WMI and Georgia Waste do not adhere to their separate corporate existences and are really one-in-the-same for purposes of personal jurisdiction." Doc. No. [10], p. 7, ¶ 15.[12] The Court considers this a piercing of the corporate veil allegation.

"Georgia veil-piercing law requires, as a minimum prerequisite, that there be insolvency on part of the corporation—that there be insufficient corporate assets to satisfy the plaintiffs claim." Great Dane Ltd. P'ship v. Rockwood Serv. Corp., No. CV4100-265, 2011 WL 2312533, at *3 (S.D. Ga. June 8, 2011) (citations omitted); see also Johnson v. Lipton, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985) ("It can thus be seen that both of these lines of cases require, as a precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable

---

[12] The Court declines to find waiver of this issue through the prior briefing, as requested by Defendant. Doc. No. [63-1], p. 29 n.29; Doc. No. [77], p. 16, n.11. Even in the absence of opposition, the Court is required to perform a merits review of a motion to dismiss. Cf. Giummo v. Olsen, 701 F. App'x 922, 924 (11th Cir. 2017) ("The district court abused its discretion by interpreting local rule 7.1(B) as permitting it to grant the defendants' motion to dismiss based solely on the plaintiffs' failure to respond in opposition.").

on a corporate claim, that there be insolvency on the part of the corporation in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim."). "Solvency—having the means to pay a money judgment—means there exists an adequate remedy at law." 2011 WL 2312533, at * 4 (citing In re Friedman's Inc., 385 B.R. 381, 415 (S.D. Ga.), *order vacated in part on reconsideration*, 394 B.R. 623 (S.D. Ga. 2008). The burden of proof to show this insolvency falls on the plaintiff. Johnson, 254 Ga. at 327.

Here, Plaintiff has not raised any claim about the insolvency of Defendant Georgia Waste that would allow Defendant WMI to be subject to personal jurisdiction under the alter-ego theory. Defendant WMI has also presented evidence that Defendant Georgia Waste has "significant assets," and "a sizeable revenue stream." Doc. No. [63-1], pp. 23–24 (citing deposition of Ruthann Burgess, Accounting Manager, Doc. No. [63-4]).[13] Plaintiff fails to refute this at any point. Accordingly, Plaintiff has not met its burden of proof. See Amason v. Whitehead, 186 Ga. App. 320, 322, 367 S.E.2d 107, 109 (1988) (holding that evidence was insufficient to warrant piercing corporate veil where there was "not even a showing of corporate insolvency at the time of the transaction, but

---

[13] The Burgess declaration was filed in a redacted form at Doc. No. [63-4] and unredacted/under seal at Doc. No. [62-1].

only that at the time of trial the corporation had no assets."); cf. Perry v. Unum Life Ins. Co. of Am., 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005) (holding that plaintiff could not pierce the corporate veil where plaintiff did not allege that company had insufficient assets to satisfy plaintiff's claim).

## CONCLUSION

For the above-stated reasons, Defendant Waste Management, Inc.'s Motion to Dismiss (Doc. No. [63]) is hereby **GRANTED**, and the Court **DISMISSES** the Complaint against said Defendant **WITHOUT PREJUDICE** for lack of personal jurisdiction.

As to the remaining Defendant, Georgia Waste Systems, Inc., the Court *sua sponte* examines its jurisdiction after the dismissal of the diverse defendant (Waste Management, Inc.) whose citizenship served as the basis for removal of this case to federal court under the Class Action Fairness Act's jurisdictional grant. See Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279–80 (11th Cir. 2001); see also 28 U.S.C. §§ 1332, 1441, and 1447(c). After review, this Court is doubtful that federal subject matter jurisdiction remains[14] and resolves this doubt

---

[14] See City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313 (11th Cir. 2012) ("all doubts about jurisdiction should be resolved in favor of remand to state court.")

in favor of remand of the Plaintiff's case against Defendant Georgia Waste Systems, Inc. to the Superior Court of Fulton County, Georgia. The Clerk is **DIRECTED** to effectuate said remand and close this case.[15]

**IT IS SO ORDERED,** this 15th day of February, 2019.

                                  s/Steve C. Jones
                                  HONORABLE STEVE C. JONES
                                  UNITED STATES DISTRICT JUDGE

---

(citations omitted); cf. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

[15] To this regard, no ruling is issued on the Motion to Dismiss filed by Georgia Waste Systems, Inc. (Doc. No. [59]) and the Clerk is **DIRECTED** to **TERMINATE** the pendency of said motion in the process of closing this case. Cf. Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ) ("a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.").

AO 72A
(Rev.8/82)